Their final case this morning is number 16-2179, Amgen, Inc. versus Hospira, Inc., Mr. Cumberidge. Good morning, your honors, and may it please the court. I'd like to begin by stating that in our view, the central issue in this appeal is what did this court decide in the Sandoz case when it said that after bringing an infringement action, the so-called reference product sponsor can access the required information through discovery? Well, it seemed to say that you could do it by bringing a suit for an artificial act of infringement, which is not what you've done. I disagree with that, your honor. I think we did bring a suit for asserting two causes of action under Section 271A and one under Section 271E2C. But what the statute seems to say is the artificial act of infringement in this case would be to the cell patent, which is not a patent on which you've sued. We don't agree with that, your honor. That's what the statute says. In other words, what we think that what the statute says is there's an artificial act of infringement with respect to potentially many patents. Once you bring a lawsuit on any one of those, you can then access the corpus of information that is defined by subsection L2A and thereafter act accordingly. And we think that's what this court held in Sandoz. And the reason for that is because if we look at how the issue arose in Sandoz, Amgen argued, well, it cannot be the case that the biosimilar applicant is allowed to withhold this information because the result would be a situation in which infringement could effectively be concealed forever. Sandoz came back and said, that's not so. You could get that information in discovery so it would be, in essence, no harm, no foul. And we understand that is what the court meant when it referred to the so-called required information. It's a set of information that's defined in the statute and it's not defined by reference to any patent. Well, but that seems to be different from what I thought your answer was in response to my question. Is it not the case that under the original Amgen opinion that if you're going to sue to get this information, you have to bring a suit alleging an artificial act of infringement under C2I, right? Your Honor, I don't believe that it's necessary that you bring a suit under that particular subsection. I think it's necessary that you bring a suit. But if you, but on the facts of this case, Amgen did bring a suit under 271E2C1 or at least under E2C. Right, but it didn't bring an action under E2C2. It did not denominate the action in the original complaint as being under E2C2. It's denominated as being under E2C, which may be ecumenical as to whether it's under C1 or C2. And in our view, Your Honor, though, the question here is. Just curious, is there anything that's preventing you right now from filing another complaint under 271E2C2? For any patents that you have that relate to manufacturing the biological product? Yes, Your Honor, and what's preventing bringing such a suit is that we can't tell whether there's infringement. And as we understand the entire statutory regime that would apply here and would apply to any lawsuit, there has to be a reasonable basis to meet Rule 11 and bring, put that patent in play. And so if you're a company like Amgen that owns literally hundreds of potentially applicable patents, you can't just pluck out one or for that matter dozens of them and say, I'm planning to bring a lawsuit and my Rule 11 basis for bringing the lawsuit is that I cannot exclude the possibility defendant that you infringed. Wait, wait, wait, that doesn't make sense. Because if the purpose of the statute here is to allow, when the information isn't implied, that you be able to get it through a suit for an artificial act of infringement, it doesn't look as though the Rule 11 standard would apply to such an action on the theory that you didn't know that the patent wasn't infringed, was infringed. I think our view of the law, Your Honor, would be that the Rule 11 standard does apply and that indeed the reason why the statute prescribes this information exchange and then uses the term for many of its operative provisions as to which the reference product sponsor has formed a, has a belief, a reasonable belief that a claim of infringement could be asserted, that what's embedded in that reasonable belief language is a, that there has been an analysis, a comparison between the accused instrumentality and a patent claim that has resulted in a belief, an objectively reasonable belief that there is infringement and that that's a precondition to bringing suit. And in fact, that as this court noted in Apotex, the very artificial act of infringement where the information is withheld, in other words, under E2C2, is defined by reference to that reasonable belief, right? Those are the patents as to which there is infringement, right? The artificial act of infringement applies. But you have to take account of the fact that the whole purpose of C2 is to allow you to sue for an artificial act of infringement if the information necessary to make a determination of infringement has not been supplied. With utmost respect, Your Honor, I don't read it that way. I certainly agree that the purpose of E2C and indeed all of E2 is to facilitate suits based on an artificial act of infringement. I do not read, Amgen does not read E2C as saying that it is in some way animated by a separate desire or standard to bring suit to get information. But it says that. I mean, it says that the applicant for the application fails to provide the application and information required, which is this situation, isn't it? Well, what it says, Your Honor, is the act of this situation. In our view, yes, it is this situation. Okay. Right? At least with respect to these patents. So perhaps out of an abundance of caution, you know, without any court ruling and commenting on the scope of Rule 11, applicability to this unique context, you chose not to file under E2C2 for any of your cell culture medium claims. But nevertheless, it seems like once you've exhausted your efforts to try to reasonably acquire and investigate a possible claim for your manufacturing patents and you haven't been able to succeed through the L2C3 process, then you, you know, appear to have a reasonable basis for now filing a claim for your cell culture patents under E2C2. Our view, Your Honor, is that we do not because we couldn't plead that. Let's assume, for example, that there are dozens or maybe even hundreds of possibly implicated patents. What would that complaint look like? It would be an immense document saying, here's a patent I own. I've asked for information about this. I haven't got the information. Therefore, I think they infringe it. That we, in our view, that can't possibly be what the statute requires or is meant to impose. So either the statute contemplates some suit on irrelevant patent is giving you the route to get the information that wasn't submitted. How do you read C2 as allowing that to happen? Because, Your Honor, the definition of the information is not based on any patent. And therefore, it's equally relevant to any patent that's asserted if one is looking at it in that fashion. The information, I think part of the problem with saying you have to sue on the patent to which this would be relevant is that the patent owner will never know which that is. As a practical matter, there can be a large number of them. And there's always the risk that you missed some that were important. And the way the statute deals with that is it doesn't say the information is defined by relevance to patents. It says in L2A, the information is the application that was submitted to the Food and Drug Administration, the entire thing. And such other information that describes the processes used to manufacture the product. And so that is entirely independent of any patents. And because the corpus of information is defined that way, once a lawsuit begins, if it's to be accessible in discovery, in our view, the whole corpus of information should be accessible in discovery regardless of what patent or patents have been put in play. And that's how we think that the statute makes much more sense that way. And that what can happen if it's viewed that way and that entire corpus of information is then disclosed. At that stage, the evaluation to form a reasonable belief as to whether a claim of infringement can reasonably be asserted can take place. And the entire process can move forward as was contemplated by the statute. And that way, we come back to this place where the end result isn't different. There might be a slight temporal change, but the end result isn't different than what would have happened had the procedures of the statute been followed. If we go the other route and we say you have to make a decision, perhaps even a guess, as to which of your many patents may be relevant and sue on those patents, and you only get then information that is relevant to the ones that you've sued on, that it ends up creating a situation in which you can miss patents and which you may never learn of an infringement. And it's grossly inefficient because it's essentially saying pull the trigger on lots of things and then we'll figure out which ones matter afterwards. It would be much better, and we think this is exactly what the statute was intended for, to say get the information, make the comparison with the accused instrumentality and then assert your claims of infringement. And if that's viewed that way, then we get that corpus of information and we simply do after the lawsuit what the statute, had it been followed, would have required before the lawsuit. How do you square that with the statutory language? Again, Your Honor, in our view, as I'm sure the court is aware, our view of the statutory language is that compliance with L2A is actually mandatory, but of course the court held to the contrary in Sandoz. So in our view, the statutory language says the information is required. It doesn't mince its words. It says in at least three places this information is required. And the required is what this court was talking about. How does the statute allow you to get under the Amgen decision, which is binding on this panel for the moment, No. How do you fit yourself under the statutory language? How is this suit that you brought, a suit that's covered by C2? Well, the complaint averse, an act of infringement under C2, Your Honor, of not of one of these patents, not of the so-called cell culture patents, but of one of the two patents that has been asserted in the underlying lawsuit. So you read C2 as allowing you to claim an artificial act of infringement with respect to any patent? No, I think the way we read it is this is a situation where some but less than all of the required information was disclosed. That information was sufficient for Amgen to form a belief that a claim of infringement could reasonably be asserted as to three patents, two of which were then included in the underlying lawsuit. And so there was an artificial act of infringement of those two patents by virtue of FOSPIRA having submitted its application to the FDA and thus triggered E271E2C. And thus Amgen can bring an action for those. And this is how we read the Sandoz decision. We have a patent or in this case two patents that we can sue on. Having sued on them, we then are in court and can get what the statute characterizes as the information required under L2A. So you're saying that there's an ancillary discovery proceeding which is implicit in the structure of the statute that enables you by suing on patents one and two to obtain information about patents four and five  That's right, Your Honor. And to focus on that a little further, it's because that second round of information isn't defined by virtue of being relevant to patents four and five. It's defined by virtue of being a set of information about the product. And that's what is required. Well, but the only reason you're seeking it is because of its potential pertinence to four and five. In this case, that's certainly true, Your Honor. Could you address the appealability question? Absolutely, Your Honor. I'd be happy to. So in our view, we meet the requirements of the collateral order doctrine. I'll talk about those first, and then we can come to Mandamus. Well, both under Mandamus and the collateral order doctrine, you've got to show that you don't have an adequate remedy by appeal. Why can't you wait until the final judgment? Exactly, Your Honor. Wait, wait. Why can't you wait until there's a final judgment appeal? Why isn't that satisfactory? Because, and I think there's agreement on this, Your Honor, one of the rights that the BPCIA gives to a patent holder or a reference product sponsor such as Amgen is the right to have the patent issues resolved before by a similar market entry. And I think that there's no dispute about this. Certainly in the red brief at page five, it states that that is one of the purposes of the statute. This court commented on that in the Apotex case. So on the facts of this, and there's very good reasons why that would be so. But to be fair, the statute also contemplates there will be times where you as the reference product sponsor will be collecting damages for sales of the biosimilar product out in the commercial marketplace. That's 271E4. So it's not set up in such a way that the statute enacted by Congress absolutely commands that all potential patent infringement suits will be filed and resolved before any biosimilar actually hits the market. That's correct, Your Honor. But I think that as we read the statute, recognizing that there are disparate views here, it's set up so that the reference product sponsor can get into court and ask for a resolution before there is biosimilar market entry. And that's in fact the purpose of the 180 days of L8B. The court may say, I disagree. You're not entitled to that. They can come on the market and that'll be a damages case. But the reference product sponsor has the ability to get there first. Now, the damages provisions of the remedy part of the 271E4, the reference product sponsor could accidentally or deliberately fail to bring suit when it is supposed to and then it may be cabined to a royalty remedy. But again, that's within the power of the reference product sponsor. And there are very good reasons as this court, for example, commented or quoted from the legislative history in the Apotex case, saying, by way of example, that it's a very different proposition to go to a district court and say, please stop this infringing product from coming on the market as opposed to going and saying, there's an infringing product on the market,  And that courts may be reluctant to do the latter more than to do the former. So, what we have is a statutory regime that was very carefully crafted to give the patent holder the ability to get into court before biosimilar market entry. Now, on the facts of this case, why do I raise this? Because, to Judge Dyke's question, why is this not adequately appealable following a judgment on the merits? Because as we make that, we work the time period in this. The earliest we think that this court could be addressing could be giving us a decision on the question that brings us here today if we waited until the final judgment is probably 2019. And we think it's highly likely or at least likely, that Hospiro will have entered the market before that, and therefore the right to have an adjudication if you wish, before biosimilar market entry will have been gone forever. And one, I don't want to be hyperbolic, but one can analogize that, say, to the case about immunity from suit. That it's not, in those cases, one could say, why is it a problem? If you lose, at the end, we'll just say you were immune and you will have prevailed. But here, part of the right that the reference product sponsor has is that if it chooses, the ability to have a resolution to go to a court and ask for a resolution before generic market entry, and that will be irrevocably lost to us, we believe. It seems to me a bit strange to say that the right not to have to face suit, which is the immunity issue, is the same as the right not to have to face competition, which is your issue. I don't think it's a right not to have to face competition. It's a right to be able to go to court and say, court, I should not have to face competition. Now those are subtly different but importantly different. It's subtle enough to elude me. Well, I think the way the statute is for example, 180 days in our view, to say there has to be a time before the generic is on the market, the biosimilar is on the market, when the patent holder or reference product sponsor can go into court and say please don't allow them to enter the market, give me a preliminary injunction because there will be an infringement if they enter the market and then we'll have a set of consequences that are untoward. I think we're out of time. We'll give you two minutes for rebuttal. I apologize, Your Honor. You were asking the questions. Mr. Maloroff. Thank you, Your Honor. May it please the court. The fundamental problem with merits of the appeal here is that the BPCIA does not alter Rule 26 of the Federal Rules of Civil Procedure. That's above and beyond and distinct from the But there's theory that somehow this comes within C2 because that seems to be the heart of the question. The cause of action that was pled was a cause of action for infringement of a patent which was close to but not quite expired and the complaint just denominated it under C, but it's actually a C1 complaint because that patent was listed on the 3A list that Amgen provided during the so-called patent dance. It is a C1. They just said C and this is not a C2 case. Even if it were a C2 case, the infringement is the infringement of this so-called isoform patent. I guess what they're arguing is that if you bring suit under the product patent under C2 that's permissible because there's an artificial infringement of the product patent. That would seem to be what they're saying. I think that does kind of capture what they're saying. There are two problems with that. One, that's not what happened here. They sued under C1. They just didn't say that, but secondly even if they sued under C2 for the product patent which I don't think C2 would fit, but even if you called it a C2 suit, Rule 26 still says that discovery is governed by the claims and defenses and the claim is for infringement of the product patent. I don't understand that Rule 26 argument. If in fact it's an artificial act of infringement not to supply the information with respect to the product patent, we don't have to worry about Rule 26 because the statute tells us that the information is relevant because that's the very basis for the suit. The information will be relevant only to the patents asserted under the so-called artificial act of infringement and therefore Rule 26 says the claim is for infringement of the product patent but for an artificial, they say for an artificial act of infringement of the product patent. The failure to supply the information is an artificial act of infringement of the product patent and not just the sell patent. That's what they said. Maybe we're, I'm not making myself clear as to which patents we're talking about. It's 298 is the patent they sued on under C. That's the product patent, right? Yes, it's related to isoforms of the product. The sell patent, the 349 they did not sue under C. So 298, they brought a lawsuit, that patent was listed on the 3A list, therefore that's a C1 suit that they brought. They just put C in the complaint but it's a C1 suit because that's the provision of C that governs that act of infringement. So if you were counseling Amgen at the beginning of this process, what would you suggest they do? Apparently you would say don't go the discovery route. What route should they have followed? Well, Amgen had options that they chose not to take advantage of. What would be the best options for a party in Amgen's position other than the Rule 26 option that they elected? Well, Amgen could have, if they thought they had a patent that this information that they're seeking was somehow relevant to, they could have listed that patent on their 3A list and indeed they had a duty to list that patent. Only if they reasonably had belief that it was infringed, right? That a claim of patent infringement could be asserted. Right, but are you suggesting they should guess and that that would be good enough to be a reasonable belief? Because Mr. Bloomberg is telling us they had no basis beyond guessing. It would be more than a guess if they looked at a patent and thought that patent was infringed and there was one piece of information that they couldn't definitively tell yet whether it was infringed. Remember, they got 700,000 pages of information. They got a complete identity. Let me zero in on let's call it, let's do a hypothetical now. Let's say that a K applicant hands over the application and the application gives lots of information about the product, the biosimilar product but gives no information about how to manufacture that biosimilar product and the K applicant refuses to hand over any manufacturing information along with the application under L2A. So now we know that there has been a violation of that mandate by Congress in L2A. So under those circumstances it seems like it would be really shooting in the dark for the RPS to list any of its manufacturing patents when it's identifying patents beyond the biologic product patented claims. Is that fair to say? If there was a violation of 2A then there are options to bring suit on patents that could be listed under 3A under C2. Right, and so I guess you're saying then that the RPS the reference product sponsor could file a lawsuit under E2C2 and necessarily would have to be guessing somewhat about which patents it identified in its complaint but upon filing that very complaint the reference product sponsor in the context of the situation shouldn't be subjected to Rule 11 sanctions and in fact there ought to be discovery produced by the K applicant in such a litigation to actually reveal the manufacturing processes for the biosimilar product. Is that a fair way of explaining how the mechanism should go? Presumably if there's an absence of information that makes the assertion of the patent reasonable then there should be a situation where Rule 11 ought not to be a concern if they essentially didn't get the information under circumstances where they should have, they had a patent assertion that would be reasonable it's not dissimilar in some ways from the Roche case cited in the party's papers where information was asked for, it wasn't given, a suit was filed, if all that's true then there shouldn't be anything that stops Amgen from filing another complaint say tomorrow under E2C2 and identifying some cell culture patents and alleging that there's been a patent infringement of those cell culture patents which would then trigger the discovery process. Well here we have a dispute between the parties as to whether 2A was compliant so the argument is they would be barred. There would be a dispute in district court and then I guess unfortunately a district court judge would have to decide whether in fact Aspera violated L2A but then if the district court concluded that yes there was manufacturing information that needed to be submitted under the L2 L3 process and wasn't handed over then under those circumstances Amgen should be able to pursue this E2C2 complaint. I'm not sure I would agree with that your honor in the sense Well why wouldn't they? Because Aspera having opted in to the 2A disclosures opted in to the patent dance But opted in only in a very partial minimal way under this theory of the fact pattern where they only complied halfway I would submit that they complied 100% Right but we're in my theoretical world right now In your theoretical world violated L2A by not satisfying the manufacturing information requirement so under that circumstance the patent should then be listed and you should go through the patent dance because the patent dance then is designed to crystallize the issues so if you opt in to 2A But I would agree that you should go through the patent dance and list patents under L3A in accordance with the actual information that the biosimilar provided under L2A but for those very important pieces of information that it did not submit then it seems like the RPS is at a loss on what to do next No I would submit that what the RPS has to do is list the patents that in your hypothetical world you're saying they might sue on under C2 I don't understand that because C2 assumes that the patents haven't been listed and it seems to say that there's an artificial act of infringement and that's because C2 applies to the situations where you have an opt out essentially you have a non-compliance with 2A of the Sandoz case for example Okay but under Judge Chin's hypothetical there's a violation of L2A there was the necessary information wasn't supplied the remedy as I understand it you say has to be under C2 right? Well at the end of the patent dance information Well there's no patent dance if it hasn't been listed Well it should be listed I guess that's where I keep circling back to C2 contemplates that it wasn't listed Correct your honor If it wasn't listed because the information wasn't handed over under L2A that's the theoretical construct we've created here for purposes of this argument If there's absolutely no way to have a compliance with 2A because there was one piece of paper submitted that said I want to market a biosimilar version of product X and no more detail was provided if that's the hypothetical it still would be possible for Amgen to list the patents that it thinks might be infringed including manufacturing patents and Amgen's view is well that would put a burden on the subsection K applicant to have to respond to a lot of patents They have to list the patents they're saying that we get to sue for artificial act of infringement under C2 and that seems to be what the original Amgen decision said and C2 assumes that the patents weren't listed but could have been if the correct information events I guess I would have two responses one is they should list if you're in the patent dance but if they don't and they sue under C2 and they sue for infringement of patents where they say they didn't get information there was a complete failure under 2A they now have a claim a cause of action for infringement of these manufacturing patents and under rule 26 discovery would presumably be appropriate for obtaining information as to those claims that are now in a lawsuit that is properly before district court. So that goes back to I guess my initial question there isn't anything stopping Amgen from filing that E2C2 complaint today for its manufacturing patents that relate to cell cultures. There would be a debate over whether or not there was a violation on your side of the L2A requirement of handing over manufacturing information and the district court would then have to decide whether or not there was a violation of L2A but if there was if the district court does conclude there was a violation of L2A then I don't see unless you tell me differently any reason why Amgen couldn't go forward on that E2C2 complaint. I guess accepting the premise that listing patents under 3A is not required and a suit under C2 is permitted once you get into a C2 suit then you can get the discovery. But if you opt into the patent dance unlike the Sandoz case and you provide information and at the edges there is a patent that the RPS thinks is infringed but they don't have 100% certainty because there's a piece of information that they don't think they can glean from the 700,000 pages they got they should list that patent and then go through the patent dance because the next thing that happens is that the subsequent K applicant provides contention. How can you say that when C2 contemplates that we're going to have an artificial active infringement when the patent was enlisted? In cases where 2A is violated. Which is the whole hypothetical we've been discussing for the last 10 minutes. I guess 2A is not violated where you opt into the patent dance. You mean you think as long as you produce something unlike Sandoz and you don't say just drop dead I'm not coming forward with anything then you've opted into the patent dance and you get treated as if you had completely complied with L2? Yes. If you make a good faith proffer of your information under 2A if there's a dispute over whether or not a piece of information is required or not that patent should be listed and you should go through the patent dance. If that doesn't happen and it is legitimate to file a C2 suit then discovery would be appropriate under the C2 suit cause of action for patent infringement of those patents that are asserted. You want to say a couple words about appealability? Yes. Thank you your honor. As to the collateral order doctrine and the all writs. Two things. This is effectively reviewable on appeal. The courts have made clear that even rights that are central to the system that are not adjudicated through an interlocutory appeal those can be reviewed effectively afterwards. In this court we have the quantum case where privilege issues were deemed to be not appealable under collateral order compelling testimony Richardson disqualification of counsel and as far as I can tell there's not been any motion to compel discovery, a denial of motion to compel where privileges weren't where immunities weren't involved where a court has ever said that was reviewable under the collateral order doctrine and I think the same principle applies under all writs. Also the issues are intertwined with the merits of the case. The rule 26 standard is claims and defenses and so under those circumstances these issues on discovery are wrapped into the merits of the case. In fact that's exactly what Judge Andrews decision was based on. That there was no relevance of the information to the patents that were asserted in the case. Okay. Thank you Mr. Norrell. Mr. Groombridge Thank you Your Honor. To just address two points. On the question of listing under L3A we think very much that the listing requirement has to be triggered by a reasonable belief and therefore it cannot be what I understand to be hosperous position that if you lack information you are therefore required to list. This is very important because if there is indeed such a listing requirement the consequence of failing to list a patent that should have been listed is that it can never ever be asserted. And so there is part of the reason why this dispute is going on is because biosimilar makers have a very powerful reason to want to expand the 3A listing requirement because whenever they can say a patent should have been listed and was not there is in essence a 60 day statute of limitations and it can never be asserted. But your defense is a reasonable belief defense. That's exactly right. I want to highlight why we're having this argument because it's a very important consequence that flows from it. The other piece to Judge Chen's hypothetical where what if I give you some but less than all of the information required under 2A. I think we have a fundamental difference. Amgen's view is that's a 2A violation if you give significantly less than all. Yes there could be disputes around the periphery but if you say I will give you the application but I refuse to give you the manufacturing information it's a violation. I think Ospera's view is if I come and give you something meaningful then I've sort of burst that bubble and there's no violation and we're operating in a situation where L2A was complied with. And so I think that's a fundamental divergence of view between the parties. Lastly Judge Dyke, with respect to the artificial active infringement in the situation like Judge Chen's hypothetical, it's our view that you could, the way the statute is written, you could in fact have an artificial active infringement under both sections. If you give me some information and I can list the patent there's an artificial act under C1 but if you've likewise violated the statute there would still be an artificial act of infringement even of the same patent under C2 and that's the reason why of the careful wording of C2 talks about a patent that could be identified. It's intending to embrace both those that were listed and those that could not be listed. Thank you Mr. Bloomberg. Thank both counsel the case is submitted. That concludes our session for this morning. All rise. The Honorable Court is adjourned until tomorrow morning. It's an o'clock a.m. Thank you.